IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 3:09-CR-299-M |
| | § | |
| DONALD W. HILL and | § | |
| RAY JACKSON | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court makes these findings of fact and conclusions of law after a trial to the Court on January 28, 2010.

### FINDINGS OF FACT

1. On June 12, 2009, in anticipation of the commencement of trial on June 22, 2009, this Court entered its Order Regarding Extrajudicial Statements (the "Order") in 3:07-CR-289-M, *United States v. Hill et al.* (Dkt. No. 822) (Special Prosecutor Ex. 1).

2. The Order noted that the case had generated extensive local publicity in both print and broadcast media, that pervasive publicity was expected to continue during the pendency of the action, and that there was a substantial likelihood that extrajudicial statements by counsel and Defendants to members of the press could impair the rights of the Defendants, the Government, and the public to a fair trial by an impartial jury.

3. The Order prohibited the parties, including Donald W. Hill ("Hill") and all attorneys, including Hill's attorney, Ray Jackson ("Jackson"), from making any statement to the press about the case, other than matters of public record, that could interfere with a fair

   trial or otherwise prejudice the Defendants, the Government, or the administration of justice.

4. The Order permitted the parties to discuss, without elaboration or any kind of characterization, information contained in the public record, scheduling information, and any decision or order by the Court that was a matter of public record.

5. The parties were prohibited from avoiding or circumventing the restrictions in the Order, by direct or indirect action, and were permitted to seek relief from the Court to modify the Order.

6. On June 18, 2009, Hill and Jackson participated in a television interview conducted by Gary Reaves of WFAA-TV, Channel 8 (the "Interview") (Special Prosecutor Exs. 2 and 2-a).

7. Having become aware of the Interview, on June 18, 2009, the Court ordered the Defendants, their counsel, and all persons providing any public relations services for the Defendants, to appear before the Court on June 22, 2009, to answer questions to determine if any actions constituting criminal contempt of the Order had occurred (Dkt. No. 842).

8. At the June 22, 2009 hearing, the Court gave Hill and Jackson notice, pursuant to Fed. R. Crim. P. 42(a)(2), of its intent to consider criminal contempt charges against them arising from possible violations of the Order (Special Prosecutor Ex. 3).

9. On October 16, 2009, the Court ordered the opening of this case against Hill and Jackson for alleged criminal contempt, under 18 U.S.C. § 401(3).  The Court appointed a Special Prosecutor to act for the Government.

10. Hill and Jackson's exposure if convicted was limited to six months imprisonment and/or a $5,000 fine, and therefore the Court proceeded to trial without a jury.

11. On January 28, 2010, the Court heard testimony from Jackson, Ken Carter, and Victor Vital, trial counsel for Defendant Sheila Farrington ("Farrington"). Hill declined to testify on January 28, 2010, although he had made voluntary statements at the hearing conducted on June 22, 2009.

12. Ken Carter, who provided public relations services for Hill and Farrington before, during, and after trial of the case, arranged for the Interview, and for other interviews, to take place on June 18, 2009. Although Mr. Carter claims to have established "ground rules" limiting Mr. Reaves to questions only about how Hill was coping with the effects of the case, the alleged ground rules were not written, and Mr. Reaves did not testify to confirm what, if any, ground rules he believed were in effect during the Interview.

13. Mr. Carter was not furnished with a copy of the Order.

14. The Interview was conducted in a conference room at Jackson's office. Jackson had read the Order and elected to participate in the Interview. He took no steps before the Interview to verify that its terms would be honored by Mr. Reaves, nor did he have a copy of the Order in his possession during the Interview. He did not verify with Mr. Reaves, at any time before or during the Interview, the ground rules for the Interview.

15. It became apparent to Jackson virtually immediately after the Interview began that Mr. Reaves was asking questions, and Hill was providing answers, that related to matters other than how Hill was coping with the case, and that the questions asked and answers given covered matters not in the public record.

16. During the Interview, Jackson made no effort to pause, nor to terminate the Interview, nor to get a copy of the Order.

17. Jackson was concerned that Hill's answers violated the Order.

18. Among the questions asked by Mr. Reaves and answered by Hill during the Interview are the following:

   a. "Do you think [the wiretaps] will exonerate you?"  Hill stated:

   > I believe they will, yes, absolutely.  With that much – with – with – with so many things recorded, so much of that on these phone conversations to the extent that they matter in the court's mind and for the benefit of the jury, I think they will exonerate us.  I'm confident that they will.

   Pl's Ex. 2-a (5:4-11).  This statement commented on the quantity and quality of the Government's evidence, and asserted that it favored the defense.  Although it was a matter of public record that wiretap evidence was collected, only the parties and their representatives were privy to the contents of this evidence, and Hill's characterization of the evidence to be introduced at trial could have prejudiced the venire.  This statement could have interfered with a fair trial or otherwise prejudiced the Government or the administration of justice, because it commented on the strength of the Government's case.

   b. "And you didn't pocket any money from the deal?"  Hill stated:  "Well, I said I'm innocent, so you know I haven't pocketed any money."  Pl's Ex. 2-a (7:4-7).  This statement elaborated on Hill's not guilty plea and discussed a key issue in the case, whether Hill received a bribe.  That was a matter for the finder of fact to determine, and this statement could have tainted the venire by having the

Defendant make statements about it outside of court. This statement could have interfered with a fair trial or otherwise prejudiced the Government or the administration of justice.

c. "So why do you think this has happened? If you're not guilty, why do you think you're getting prosecuted?" Hill stated:

> And what I've said, and I've expressed it several times, is that we can now look in hindsight and see that local Democratic officials were targeted by the FBI and the Justice Department under our last president, Mr. Bush, so that now we can look back and see a clear statistical and anecdotal body of evidence that shows that that was what was happening. So I respect the role that the government plays in investigating in [sic] wrongdoing or alleged wrongdoing, I don't think I can walk away from the fact that I fit the pattern that was exhibited by this Bush Justice Department of being a local Democrat, being on the rise, and being told by an agent when he first meets me that my political career is over with. I think, in part, I'm here because I was targeted. . . . The jury will have to look at the evidence and the facts and what people say from the witness stand, and that won't deal with very much, if anything, about local Democrats or politics, it will just deal with whether Don Hill and Sheila Hill did anything that was wrong and improper. And I can sit here with a certainty, looking at you right now and say to you that we didn't. And I am convinced that we're going to be exonerated.

Pl's Ex. 2-a (9:8-10:18). Although Hill filed a Motion to Dismiss the Indictment for Selective Prosecution (Dkt. No. 339), which was denied on September 10, 2008, "clear statistical and anecdotal body of evidence" did not appear in any pleadings. Hill's detailed statement of governmental bias exceeded the public record and could have interfered with a fair trial or otherwise prejudiced the Defendants, Government, or the administration of justice by raising a charged issue that could have prejudiced the venire.

d. "So do you think race has anything to do with this?"  Hill said:

> In this particular case, I think it does. . . . But I can't walk away from the fact that the officials, the elected and appointed officials that were being investigated when this whole matter started were African-American.  And so to ignore that would be foolish, in my judgment.  So I think if you start out with the idea that the government targeted me and other Democrats, local Democrats, as a part of what was happening across the country, then that casts a doubt on the credibility of the investigation.  If there's credibility doubts on the – in the investigation, then the next step is that it's not impossible or even that difficult to believe that other improper motives could creep in as well.  So you can't ignore it was – it was all black elected and appointed officials that were being investigated.  You just can't ignore that.

Pl's Ex. 2-a (11:14-12:13).  Hill was not quoting from his overruled Motion to Dismiss, but was contending that the prosecution was racially motivated, a contention which could have prejudiced members of the venire on the eve of trial. Hill also questioned the credibility and objectivity of the Government's investigation, and those statements could have interfered with the administration of justice and prejudiced the Government.

e. "Who do you blame for [the investigation of black elected and appointed officials]?"  Hill said:

> [I] don't really have a good answer for that.  I think what you try to do is try to hope that it doesn't happen to anybody else and you try to address it here.  And that's why, though, the jury is going to look at the facts of the case, that's why we do talk about the targeting piece, because we don't want any more families, if at all possible, to have to go through their lives disrupted and a cloud hanging over them like we've had hanging over us for four years if there's something that we can do by highlighting some of the things that we believe are taking place.

Hill's repeated statements of governmental bias and assertion that his statements

      were intended to help others who were wrongfully targeted could have prejudiced the venire, interfered with a fair trial, or otherwise prejudiced the Defendants, the Government, or the administration of justice.

19. Hill's statements during the Interview as described in paragraph 18 violated the Order by providing statements about the case that were not limited to matters of public record.

20. Hill was aware of the Order, and as an attorney was capable of accurately interpreting it, and did in fact understand the Order and its purpose.

21. When Mr. Reaves asked Hill questions he considered intrusive and outside of the bounds of what he understood to be the ground rules, Hill asked Mr. Reaves to leave "the family piece and personal piece apart," thus demonstrating his willingness and ability not to answer as he chose.

22. Hill did not review the ground rules with Mr. Reaves, nor did he tell him of the Order when Mr. Reaves inquired about wiretap evidence, accepting bribes, or racial or political motives for the prosecution.

23. Hill did not have a copy of the Order during the Interview, did not seek to obtain a copy during the Interview, and did not ask his attorney for guidance.

24. Hill's behavior in answering questions showed a willful or reckless disregard for the Court's Order, the need for a fair trial by an impartial jury, and the fair administration of justice.

25. The Government proved beyond a reasonable doubt that Hill acted with a willful, contumacious, or reckless state of mind to violate the Order during the Interview.

26. Among the questions asked by Mr. Reaves and answered by Jackson during the Interview

are the following:

   a. "Is it stuff on the wiretaps that worries you?"  Jackson responded:  "Not particularly."  Pl's Ex. 2-a (19:7-9).  At the trial of the contempt action, the defense cited a May 24, 2009 Dallas Morning News article (D's Ex. 2), arguing that it was a matter of public record that Jackson was not concerned about the wiretap evidence.  However, the article neither quoted Jackson nor described his thoughts about the wiretap evidence.  Further, prior news articles did not necessarily provide safe harbors for answers given during the Interview.  Jackson's view of the wiretap evidence could have prejudiced the venire and interfered with a fair trial or otherwise prejudiced the Government or the administration of justice, because it commented on the strength of the Government's case and the quality of its evidence.

   b. "How is your confidence level on this?"  Jackson said:  "We've always said that Mr. Hill was not guilty.  We've done that from day one.  And we plan on this trial being the first chance he has to exonerate himself."  Pl's Ex. 2-a (19:19-24).  Taken in context with Jackson's view of the wiretap evidence, this statement elaborated on Hill's not guilty plea and could have prejudiced the Government or the administration of justice by implying that the evidence introduced at trial would lead to Hill's exoneration.

   c. "What do you think about his claim that this whole prosecution is politically motivated?"  Jackson stated:

   > Well, that's – that's been the claim since the beginning.  That's been a claim of several people around the country.  I can't – I

> can't particularly speak to that, because I don't know. But I know that there are several people who have made the claim and then there's been several people who have shown that during the Bush Administration that Democrats were targeted.
>
> Pl's Ex. 2-a (23:7-17). Jackson did not purport to quote from Hill's overruled Motion to Dismiss, but contended that the prosecution was politically motivated, and implied that it was connected to a larger scheme by the Bush Administration to target Democrats. Jackson's statement of governmental bias could have prejudiced the venire and interfered with a fair trial or otherwise prejudiced the Defendants, the Government, or the administration of justice.

27. Jackson's statements during the Interview as described in paragraph 26 violated the Order by providing statements about the case that were not limited to matters of public record.

28. Jackson was aware of the Order and of its purpose.

29. Jackson disregarded the risk that a violation of the Order, particularly a few days before jury selection, could taint the jury pool, by commenting on the strength and quality of the Government's wiretap evidence and discussing the charged issue of selective prosecution based on Hill's race and/or political affiliation.

30. Jackson's behavior showed a reckless disregard for the Court's Order, the need for a fair trial by an impartial jury, and the fair administration of justice.

31. Although the Court believes that Jackson should have terminated the Interview virtually immediately, when he had reason to believe Hill's answers violated the Order, the Court is holding him responsible only for his own answers, which were fewer and less serious than Hill's.

32. The Government proved beyond a reasonable doubt that Jackson acted with a reckless state of mind to violate the Order during the Interview.

## CONCLUSIONS OF LAW

1. To find the Defendants guilty of criminal contempt under 18 U.S.C. § 401(3), the Court must find that the Government proved beyond a reasonable doubt that there was: (1) a reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order. *See United States v. Allen*, 587 F.3d 246, 255 (5th Cir. 2009).

2. To determine if an order is specific, the Court conducts a "factual inquiry into the reasonableness of the order's specificity, given the context in which it was issued." *In re Hipp, Inc.*, 5 F.3d 109, 112 (5th Cir. 1993).

3. The Order was entered ten days before jury selection in the context of extensive pretrial publicity, which if not controlled as to the parties, could have potentially tainted the jury pool. *See generally Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1044 (1991) ("A statement which reaches the attention of the venire on the eve of *voir dire* might require a continuance or cause difficulties in securing an impartial jury, and at the very least could complicate the jury selection process."). Relying on *Gentile*, Jackson contends that the phrase "without elaboration or any kind of characterization" and the exceptions in the Order for matters of public record render it ambiguous. The Fifth Circuit distinguished *Gentile*, which involved a rule of professional conduct applicable only to counsel, from a restriction on extrajudicial speech applicable to all trial participants. *See United States v. Brown*, 218 F.3d 415, 428 (5th Cir. 2000). The panel found that an order similar to that in issue, permitting the parties to discuss information contained in the public record

"without elaboration or any kind of characterization," provided sufficient guidance regarding the nature of the prohibited comments.   *See Brown*, 218 F.3d at 419, 430. The terms of the subject Order were reasonably specific, and Defendants never sought modification or clarification of the Order.

4. The Government was required to prove beyond a reasonable doubt that the Defendants had the willful intent to violate the Order.   The evidence must show "both a contemptuous act and a willful, contumacious, or reckless state of mind."   *Allen*, 587 F.3d at 255.   "'[W]illfulness' in the context of the criminal contempt statute at a minimum requires a finding of recklessness, which requires more than a finding that an individual 'reasonably should have known' that the relevant conduct was prohibited." *Id.*   Willfulness may be established by "behavior amounting to a reckless disregard for the administration of justice . . . ."   *Dominique v. Georgia Gulf Corp.*, 81 F.3d 155 (5th Cir. 1996) (quoting *United States v. Burstyn*, 878 F.2d 1322, 1324 (11th Cir. 1989)).

5. Jackson's Motion for Judgment of Acquittal (Dkt No. 26) on the charge of criminal contempt is **DENIED**.

Based on the Findings of Fact and Conclusions of Law set out herein, having determined that the Government has proven the elements of criminal contempt, under 18 U.S.C. § 401(3), beyond a reasonable doubt, the Court finds Defendants Donald W. Hill and Ray Jackson **GUILTY** of criminal contempt.

**SO ORDERED**.

March 31, 2010.

_____
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**